UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBERT SERION,<br><br>    Plaintiff,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC., LLOYD CARNEY, MARK BENJAMIN, DANIEL BRENNAN, THOMAS EBLING, BOB FINOCCHIO, LAURA KAISER, MICHAL KATZ, MARK LARET, and SANJAY VASWANI,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Nuance Communications, Inc. ("Nuance" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Nuance, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Nuance by Microsoft Corporation ("Parent") and Big Sky Merger Sub Inc. ("Merger Sub," and together with Parent, "Microsoft") (the "Proposed Transaction").

2. On April 11, 2021, Nuance's caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Microsoft. Pursuant to the terms of the Merger Agreement,

1

Nuance's stockholders will receive $56.00 in cash for each share of Nuance common stock they own (the "Merger Consideration"), in an all cash transaction valued at $19.7 billion and is expected to close in 2021.

3. On May 17, 2021, in order to convince Nuance public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections prepared by Nuance management; and (ii) the financial analyses conducted by Evercore Group L.L.C. ("Evercore"), Nuance's financial advisor.

5. The special meeting of Nuance's shareholders to vote on the Proposed Transaction is scheduled for June 5, 2021, and consummation of the Proposed Transaction will follow thereafter (the "Shareholder Vote").  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Nuance's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Nuance's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act

and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Nuance's common stock trades on the Nasdaq Global Select Market, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nuance common stock.

11. Defendant Nuance is a public company incorporated under the laws of Delaware with principal executive offices located at 1 Wayside Road, Burlington, Massachusetts, 01803. Nuance's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "NUAN."

12. Individual Defendant Lloyd Carney has served as a member of the Board since September 2018 and is the Chairman of the Board.

13. Individual Defendant Mark Benjamin has served as a member of the Board since April 2018 and is the Company's Chief Executive Officer.

14. Individual Defendant Daniel Brennan has served as a member of the Board since September 2018.

15. Individual Defendant Thomas Ebling has served as a member of the Board since September 2018.

16. Individual Defendant Bob Finocchio has served as a member of the Board since April 2015.

17. Individual Defendant Laura Kaiser has served as a member of the Board since December 2017.

18. Individual Defendant Michal Katz has served as a member of the Board since April September 2018.

19. Individual Defendant Mark Laret has served as a member of the Board since June

20. Individual Defendant Sanjay Vaswani has served as a member of the Board since February 2018.

21. The defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Nuance, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22. Nuance is Nuance is a technology pioneer and market leader in conversational artificial intelligence ("AI") and ambient clinical intelligence. Nuance works with thousands of organizations globally across healthcare, financial services, telecommunications, government and retail - to create stronger relationships and better experiences for their customers and workforce. Nuance offers its customers a wide range of products and services, including clinical documentation,

solutions for clinicians, radiologists and care teams, as well as intelligent customer engagement and security biometric solutions for leading brands. In addition, Nuance's solutions increasingly utilize its innovations in AI, including cognitive sciences and machine learning to create smarter, more natural experiences with technology.  Nuance markets and sells its solutions and technologies around the world directly through a dedicated sales force and a global network of resellers, including system integrators, independent software vendors, value-added resellers, distributors, hardware vendors, telecommunications carriers and e-commerce websites.

23. On April 11, 2021, Nuance's Board caused the Company to enter into the Merger Agreement with Microsoft.

24. Pursuant to the terms of the Merger Agreement, Microsoft, upon the terms and subject to the conditions set forth in the Merger Agreement, will acquire Nuance for $19.7 billion in cash. Specifically, Nuance's stockholders will receive $56.00 in cash for each share of Nuance common stock they hold.

25. According to the April 12, 2021 press release announcing the Proposed Transaction:

> **Microsoft accelerates industry cloud strategy for healthcare with the acquisition of Nuance**
>
> *Acquisition will combine solutions and expertise to deliver new cloud and AI capabilities across healthcare and other industries*
>
> REDMOND, Wash., and BURLINGTON, Mass. – April 12, 2021 – Microsoft Corp (Nasdaq: MSFT) and Nuance Communications, Inc. (Nasdaq: NUAN) today announced they have entered into a definitive agreement under which Microsoft will acquire Nuance for $56.00 per share, implying a 23% premium to the closing price of Nuance on Friday, April 9, in an all-cash transaction valued at $19.7 billion, inclusive of Nuance's net debt. Nuance is a trusted cloud and AI software leader representing decades of accumulated healthcare and enterprise AI experience. Mark Benjamin will remain CEO of Nuance, reporting to Scott Guthrie, executive vice president of Cloud & AI at Microsoft. The transaction is intended to close this calendar year.
>
> Microsoft has accelerated its efforts to provide industry-specific cloud offerings to support customers and partners as they respond to disruption

and new opportunities. These efforts include the Microsoft Cloud for Healthcare, introduced in 2020, which aims to address the comprehensive needs of the rapidly transforming and growing healthcare industry. Today's acquisition announcement represents the latest step in Microsoft's industry-specific cloud strategy.

Nuance is a pioneer and a leading provider of conversational AI and cloud-based ambient clinical intelligence for healthcare providers. Nuance's products include the Dragon Ambient eXperience, Dragon Medical One and PowerScribe One for radiology reporting, all leading clinical speech recognition SaaS offerings built on Microsoft Azure. Nuance's solutions work seamlessly with core healthcare systems, including longstanding relationships with Electronic Health Records (EHRs), to alleviate the burden of clinical documentation and empower providers to deliver better patient experiences. Nuance solutions are currently used by more than 55% of physicians and 75% of radiologists in the U.S., and used in 77% of U.S. hospitals. Nuance's Healthcare Cloud revenue experienced 37% year-over-year growth in Nuance's fiscal year 2020 (ended September 2020).

Microsoft's acquisition of Nuance builds upon the successful existing partnership between the companies that was announced in 2019. By augmenting the Microsoft Cloud for Healthcare with Nuance's solutions, as well as the benefit of Nuance's expertise and relationships with EHR systems providers, Microsoft will be better able to empower healthcare providers through the power of ambient clinical intelligence and other Microsoft cloud services. The acquisition will double Microsoft's total addressable market (TAM) in the healthcare provider space, bringing the company's TAM in healthcare to nearly $500 billion. Nuance and Microsoft will deepen their existing commitments to the extended partner ecosystem, as well as the highest standards of data privacy, security and compliance.

"Nuance provides the AI layer at the healthcare point of delivery and is a pioneer in the real-world application of enterprise AI," said Satya Nadella, CEO, Microsoft. "AI is technology's most important priority, and healthcare is its most urgent application. Together, with our partner ecosystem, we will put advanced AI solutions into the hands of professionals everywhere to drive better decision-making and create more meaningful connections, as we accelerate growth of Microsoft Cloud in Healthcare and Nuance."

Beyond healthcare, Nuance provides AI expertise and customer engagement solutions across Interactive Voice Response (IVR), virtual assistants, and digital and biometric solutions to companies around the world across all industries. This expertise will come together with the breadth and depth of Microsoft's cloud, including Azure, Teams, and Dynamics 365, to deliver next-generation customer engagement and security solutions.

> "Over the past three years, Nuance has streamlined its portfolio to focus on the healthcare and enterprise AI segments, where there has been accelerated demand for advanced conversational AI and ambient solutions," said Mark Benjamin, CEO, Nuance. "To seize this opportunity, we need the right platform to bring focus and global scale to our customers and partners to enable more personal, affordable and effective connections to people and care. The path forward is clearly with Microsoft — who brings intelligent cloud-based services at scale and who shares our passion for the ways technology can make a difference. At the same time, this combination offers a critical opportunity to deliver meaningful and certain value to our shareholders who have driven and supported us on this journey."
>
> The transaction has been unanimously approved by the Boards of Directors of both Nuance and Microsoft. The deal is intended to close by the end of this calendar year and is subject to approval by Nuance's shareholders, the satisfaction of certain regulatory approvals, and other customary closing conditions.
>
> Upon closing, Microsoft expects Nuance's financials to be reported as part of Microsoft's Intelligent Cloud segment. Microsoft expects the acquisition to be minimally dilutive (less than 1 percent) in fiscal year 2022 and to be accretive in fiscal year 2023 to non-GAAP earnings per share, based on the expected close timeframe. Non-GAAP excludes expected impact of purchase accounting adjustments, as well as integration and transaction-related expenses. The acquisition will not impact the completion of its existing share repurchase authorization.
>
> \* \* \*
>
> Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Microsoft, while Simpson Thacher & Bartlett LLP is acting as its legal advisor. Evercore is acting as exclusive financial advisor to Nuance, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as its legal advisor.

(Emphasis in original).

**The Proxy Omits Material Information**

26.     On May 17, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC. The special meeting of Nuance stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material

information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

**Materially Misleading Statements and Omissions Regarding the Management-Prepared Financial Forecasts**

27. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Evercore's fairness opinion, Evercore reviewed "certain internal projected financial data relating to Nuance prepared and furnished to Evercore by management of Nuance." Notably, the projections contain provides values for two non-GAAP financial metrics: Adjusted EBITDA, and Unlevered Free Cash Flow.

28. The Proxy, however, fails to provide: (i) the line items underlying Nuance's Unlevered Free Cash Flow; (ii) the line items used to calculate Nuance's Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics. The omission of this information renders the projections disclose by Defendants a mis-leading half-truth.

29. When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. In the present case, Defendants' failure to disclose the line items used to calculate Unlevered Free Cash Flow, Adjusted EBITDA, or to provide the requisite reconciliation of all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

31. Investors are concerned, perhaps above all else, with the projections and cash flows

8

of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear: Is the Merger Consideration fair compensation given Nuance's projected cash flows? Without the line items underlying Nuance's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

32. For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

33. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Evercore, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on page 48 of the Proxy misleading.

**Materially Incomplete and Misleading Disclosures Concerning Evercore's Financial Analyses**

34. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy

9

fails to disclose: (i) the individual multiples and metrics for the companies observed by Evercore in the analysis; (ii) the basis for selecting a reference range of enterprise value/Adjusted EBITDA multiples of 30.0x – 40.0x and applying this range to the Company's 2021E Adjusted EBITDA; (iii) the basis for selecting a reference range of equity value/LFCF multiples of 40.0x–50.0x and applying this range to the Company's estimated levered, after-tax free cash flows ("LFCF") in 2021; (iv) the Company's LFCF; (v) the Company's net debt as of December 31, 2020; (vi) the number of fully diluted shares of Nuance common stock; (vii) the basis for selecting a reference range of enterprise value/revenue multiples of 8.0x – 11.0xx and applying this range of multiples to the Company's estimated revenue in 2021; (viii) the basis for selecting a reference range of enterprise value/Adjusted EBITDA multiples of 20.0x – 30.0x and applying this range to Company 2021E Adjusted EBITDA; and (ix) the basis for selecting a reference range of equity value/LFCF multiples of 30.0x – 40.0x and applying this range of multiples to the Company's estimated LFCF in 2021. *See Proxy pp. 40-43*

35. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy is also materially misleading and incomplete because it fails to disclose (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 4.0% to 5.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%; and (iv) the Company's weighted cost of capital. *See* Proxy at 43. Moreover, Evercore's *Discounted Cash Flow Analysis* is based on unlevered free cash flows and Adjusted EBITDA, but omits the critical line items as discussed above.

36. These key inputs are material to Nuance shareholders, and their omission renders the summary of Evercore's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which

10

can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Nuance's shareholders cannot evaluate for themselves the reliability of Evercore's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Evercore, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

37. With respect to Evercore's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy further fails to disclose: (i) the projected cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; and (iv) Evercore's basis for applying a revenue multiple of 15.0x-20.0x.

38. Evercore's *Equity Research Analyst Price Targets* analysis on page 44 of the Proxy is also materially misleading. Specifically, it fails to disclose the analysts observed by Evercore in the analysis or the price target published by each equity research

39. Evercore's *Selected HC & ENT Transactions Analysis and Selected Vertical Software Transactions Analysis* on pages 44-45 of the Proxy is also materially misleading failure to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples and metrics for the transactions; (iii) Nuance's estimated net debt; (iv) Evercore's basis for selecting the multiples range used in the analysis; and (v) the number of fully diluted shares of Nuance common stock.

40. Evercore's *Selected Vertical Software Transactions Analysis* on page 45 of the Proxy is further materially misleading for failure to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples and metrics for the transactions; (iii) Nuance's estimated net debt; (iv) Evercore's basis for selecting the multiples range used in the analysis; and (v) the number of fully diluted shares of Nuance common stock.

41. Evercore's *Premiums Paid Analysis* on page 46 of the Proxy Statement is likewise materially misleading for failure to disclose the transactions and premiums observed by Evercore in the analysis.

42. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

47. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Nuance; and (ii) the valuation analyses performed by Evercore in support of its fairness opinion.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or

13

omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

49. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved

in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

51. Nuance is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

52. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Nuance within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nuance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

57.   In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.   Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.   Preliminarily enjoining Defendants and all persons acting in concert with them from

proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

      B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 26, 2021        **MONTEVERDE & ASSOCIATES PC**

      By: */s/ Juan E. Monteverde*
      Juan E. Monteverde (JM-8169)
      The Empire State Building
      350 Fifth Avenue, Suite 4405
      New York, NY 10118
      Tel:(212) 971-1341
      Fax:(212) 202-7880
      Email: jmonteverde@monteverdelaw.com

      *Attorneys for Plaintiff*