UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT SERION,

                              Plaintiff,

                   -v-

NUANCE COMMUNICATIONS, INC.,
*et al.*,

                              Defendants.

21-CV-4701 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff's counsel, Monteverde & Associates PC ("Monteverde") moves for an award of attorney's fees and expenses of $250,000, alleging that, due to its efforts, Defendants Nuance Communications, Inc., Lloyd Carney, Mark Benjamin, Daniel Brennan, Thomas Ebling, Bob Finocchio, Laura Kaiser, Michal Katz, Mark Laret, and Sanjay Vaswani (collectively, "Nuance" or "Defendants") disclosed material information to Nuance's shareholders about a merger with Microsoft Corporation.  (Dkt. No. 4.)

I.      **Background**

In April 2021, Nuance entered into an agreement and plan of merger with Microsoft Corporation.  (Dkt. No. 1 ¶ 2.)  Pursuant to the merger, Nuance's stockholders would receive $56.00 for each share of Nuance stock they owned.  (*Id.*)  On May 17, 2021, Nuance filed a proxy statement with the SEC.  (Dkt. No. 16-4.)

On May 26, 2021, Plaintiff Albert Serion, a Nuance shareholder, filed a complaint against Nuance, alleging violations of Sections 14(a) and 20(a) of the Exchange Act.  (Dkt. No. 1.)  Specifically, Plaintiff contended that the proxy statement omitted material information.  (Dkt. No. 1 ¶¶ 26–42.)  Monteverde emailed Defendants' counsel a copy of the complaint.  (Dkt. No. 5 at 2.)  Multiple complaints challenging the proxy statement's disclosures were also filed in

1

federal court by purported Nuance shareholders prior to the filing of Plaintiff's complaint. (Dkt. No. 6-1 at 4; Dkt. No. 15 at 3.)

On June 8, 2021, Defendants filed a Schedule 14A with the Securities and Exchange Commission as a supplement to the proxy statement (Dkt. No. 6-1), which mooted Plaintiff's claims (Dkt. No. 5 at 2). Nuance maintained that the complaints were "without merit" and "no further disclosure [was] required to supplement" the proxy statement. (Dkt. No. 6-1 at 5.) Nonetheless, "to minimize the expense and distraction of defending such actions," Nuance disclosed additional information about the merger. (*Id.*) The disclosures clarified a nondisclosure agreement between the two companies and provided more information about the financial analysis completed by Evercore Group LLC ("Evercore"), a financial advisor, including information concerning disclosures at issue in Plaintiff's complaint. (Dkt. No 6-1 at 5–9.) A week later, 99% of Nuance shareholders (excluding abstentions) approved the merger with Microsoft. (*See* Dkt. No. 16-7.)

On August 20, 2021, Monteverde filed a motion for attorney's fees and expenses. (Dkt. No. 4.) Nuance opposed the motion. (Dkt. No. 15.)

II.   **Discussion**

Though in the United States "the general rule [is] that, absent statute or enforceable contract, litigants pay their own attorneys' fees," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975), courts have created certain exceptions. One such exception is the "common benefit" doctrine, which permits a litigant to obtain reimbursement of attorney's fees "in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class," *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970), including in circumstances where the dispute is mooted because the relief sought has been obtained, *see*

*Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir. 1984).  In such cases, the plaintiff has the burden of demonstrating that a substantial benefit was conferred, and the defendant has the burden of establishing the absence of a causal connection between the lawsuit and the defendant's action mooting the suit.  *See Topley v. SemGroup Corp.*, No. 19 Civ. 9630, 2021 WL 1172622, at *3 (S.D.N.Y. Mar. 29, 2021) (citing *Savoie v. Merchs. Bank*, 84 F.3d 52, 57 (2d Cir. 1996)).

### A.     Causal Connection

Monteverde first contends that it caused Defendants to issue the supplemental disclosures.  (Dkt. No. 5 at 5–6.)  Defendants do not dispute this.  Indeed, Nuance identified all the lawsuits, including this one, in the supplemental disclosures, indicating that the lawsuits together prompted the filing of the additional information.  (Dkt. No. 6-1 at 4.)  Thus, the Court concludes that Defendants have not established the absence of a causal connection between Plaintiff's lawsuit and the supplemental disclosures.  *See Topley*, 2021 WL 1172622, at *4.

### B.     Substantial Benefit

Monteverde next argues that the supplemental disclosures conferred a substantial benefit on Nuance shareholders.  "To constitute a substantial benefit, and thus to entitle a party to attorneys' fees, a disclosure must provide something more than technical in consequence and . . . accomplish[] a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest."  *Topley*, 2021 WL 1172622, at *4 (internal quotation marks omitted).

Monteverde contends that it provided two substantial benefits to Nuance shareholders — (1) prompting Defendants to disclose previously withheld revenue multiples, EBITDA multiples, and cash flow multiples that Evercore calculated for the peer companies it selected to perform

the public company trading analysis; and (2) prompting Defendants to disclose the research

analysts' price targets for Nuance.  (Dkt. No. 5 at 7–13.)  The Court addresses each in turn.

### 1.    Withheld Multiples

Evercore conducted a public company trading analysis in which it compared Nuance to

thirty-five peer companies "via the calculation of each financial metric as a multiple of the

enterprise value for each company."  (Dkt. No. 5 at 8.)  Monteverde contends that the proxy

statement provided only the mean and median multiples for these various metrics, and that

disclosure of the individual multiples was important because it allowed Nuance shareholders to

assess the comparative value of the selected companies.  (Dkt. No. 5 at 9.)  Furthermore,

Monteverde contends that the disclosure revealed that Evercore omitted multiples that were

above 75.0x, resulting in a misleading valuation range.  (Dkt. No. 5 at 10.)  Defendants argue

that this disclosure did not confer a substantial benefit on Nuance shareholders because the proxy

statement provided a detailed summary of Evercore's analysis.  (Dkt. No. 15 at 8.)  The Court

agrees with Defendants.

"[A] disclosure statement must contain only a 'fair summary' of the underlying bases for

a financial advisor's fairness opinion.  Investors, as a general matter, are *not* entitled to

disclosures sufficient to make [their] own independent assessment of a stock's value."  *Sodhi v.*

*Gentium S.p.A.*, No. 14 Civ. 287, 2015 WL 273724, at *5 (S.D.N.Y. Jan. 22, 2015) (internal

quotation marks and citations omitted); *see also Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir.

2022) ("Disclosure of an item of information is not required . . . simply because it may be

relevant or of interest to a reasonable investor.")

Here, Nuance provided a detailed summary of Evercore's public company trading

analysis, including the companies Evercore chose for comparison, the calculations Evercore

made for each company, the mean and median multiples for each calculation, the reference

ranges for each multiple, and the implied equity value per share of Nuance stock based on these ranges.  (Dkt. No. 16-4 at 40–43, Annex C.)  Numerous courts have concluded that prompting disclosure of underlying valuation metrics does not confer a substantial benefit on shareholders and that their disclosure is not required by law.  *See, e.g.*, *Topley,* 2021 WL 1172622, at *6–*7 (concluding that the assumptions and valuation metrics underlying the financial analyses did not provide shareholders with a substantial benefit); *Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742, 751 (S.D. Ind. 2017) ("[T]he disclosure of individual multiples for each of the nineteen companies UBS Securities compared to [Defendant], as well as figures underlying six mergers transactions examined by UBS Securities, is immaterial."); *In re Trulia Stockholder Litig.*, 129 A.3d 884, 906 (Del. Ch. 2016) (inclusion of "individual company multiples are [not] material"). This is especially the case where individual multiples are publicly available, as they were here. *See Bushansky*, 262 F. Supp. 3d at 751–52.  (*See* Dkt. No. 15 at 8.)

Furthermore, Nuance made clear that "none of the selected companies is directly comparable to Nuance" and that the "evaluation of the results of this analysis is not entirely mathematical" (Dkt. No. 16-4 at 43), putting a reasonable shareholder on notice that the proxy statement "does not represent a complete description of all analyses performed" and therefore "makes it not misleading to omit any analysis that [Evercore] may or may not have conducted." *Sodhi*, 2015 WL 273724, at *6.

### 2.     Equity Research Analyst Price Targets

Monteverde also contends that it caused Defendants to disclose previously withheld research analysts' price targets, whereas previously Defendants had only provided a range of price targets between $45.00 and $65.00.  (Dkt. No. 5 at 12.)  Monteverde argues that this disclosure is a material benefit because the range misleadingly omitted the fact that seven of the eight price targets exceeded the $56.00 value of the merger consideration.  (Dkt. No. 5 at 12–13.)

5

Defendants counter both that this limited information did not alter the "total mix" of information made available, thereby failing to confer a substantial benefit, and that the disclosed information was already publicly available. (Dkt. No. 16 at 11–12.) The Court agrees with Defendants. As with the individual multiples, the range of price targets provided in the proxy statement provides a fair summary of Evercore's work and "[q]uibbles with a financial advisor's work simply cannot be the basis of a disclosure claim." *Sodhi*, 2015 WL 273724, at *5 (internal quotation marks omitted).[1]

## III.    Conclusion

For the foregoing reasons, Monteverde's motion for attorney's fees and expenses is DENIED. As the parties acknowledge that Plaintiff's underlying claims are moot, this action is dismissed.

The Clerk of Court is directed to close the motion at Docket Number 4 and to close this case.

SO ORDERED.

Dated: February 7, 2022
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] Because the Court concludes that Monteverde did not confer a substantial benefit on Nuance stockholders, it need not reach whether the requested attorney fee of $250,000 is reasonable.